**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CATHY BUCH, | : Case No. 1:23-cv-08854-DEH |
| Plaintiff, | : |
| v. | : |
| MARIA ASUNCION ARAMBURUZABALA LARREGUI, BEATRICE BALLINI, JOACHIM CREUS, OLIVIER GOUDET, PETER HARF, JOHANNES P. HUTH, ANNA ADEOLA MAKANJU, SUE NABI, ISABELLE PARIZE, LUBOMIRA ROCHET, ROBERT SINGER, and COTY INC., | : __ORAL ARGUMENT REQUESTED__ |
| Defendants. | : |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**BARRACK, RODOS & BACINE**
A. Arnold Gershon
640 Eighth Avenue, 10th Floor
New York, NY 10036
Telephone: (212) 688-0782
Fax: (212) 688-0783
Cell: (917) 621-7998
agershon@barrack.com

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS .........................................................................................2

ARGUMENT .............................................................................................................4

    I.   Count I of the Amended Complaint States a Claim for Relief Under §14(a) ...............4

    II.  Coty's 2023 Proxy Statement Violates §14(a) in That It Is False or Misleading Because It Omits to Disclose Facts That the SEC Specifically Requires ........................5

    III. Coty's 2023 Proxy Statement Violates §14(a) in That It Is False or Misleading Because It Omits to Disclose All Compensation in Dollars ..............................................9

    IV. Loss Causation Is Not An Element of the Claim in Count I...........................................11

    V.  Count II of the Amended Complaint States a Claim for Relief as a Stockholder's Derivative Action.....................................................................................................14

        A.  The Law Excuses Pre-Suit Demand as to All the Members of the Board ................18

        B.  The Stockholder's Derivative Claim in Count II States a Claim for Relief.............21

CONCLUSION.........................................................................................................22

## **TABLE OF AUTHORITIES**

**Cases**                                                                         **Page(s)**

*Allyn Corp. v. Hartford Nat. Corp.,*
   No. H 81-912 (Cabranes), 1982 WL 1301 (D. Conn., March 30, 1982) ................................ 8

*Batterton v. Francis,*
   432 U.S. 416 (1977) ....................................................................................................... 15

*Berger v. Adkins, C.A. No. 2022-0487-KSJM,*
   2023 WL 5162408 (Del. Ch. Aug. 8, 2023) .................................................................... 12-13

*Bisel v. Acasti Pharma, Inc.,*
   2022 WL 4538173 (S.D.N.Y. Sept. 28, 2022) ...................................................................... 5

*Brehm v. Eisner,*
   746 A.2d 244 (Del. 2000) .................................................................................................. 17

*City of Fort Myers Gen. Employees' Pension Fund v. Haley,*
   235 A.3d 702 (Del. 2020) ............................................................................................ 16, 18

*Edelman v. Salomon,*
   559 F.Supp. 1178 (D. Del. 1983) ...................................................................................... 13

*EMAK Worldwide, Inc. v. Kurz,*
   50 A.3d 429 (Del. 2012) .................................................................................................... 12

*Espinoza v. Dimon,*
   797 F.3d 229 (2d Cir. 2015) .............................................................................................. 14

*Gallin v. National City Bank,*
   273 N.Y.S. 87 (Sup. Ct. New York County, 1934) ............................................................. 18

*Garfield v. Allen,*
   277 A.3d 296 (Del. Ch. 2022) ........................................................................................... 20

*Gen. Elec. Co. by Levit v. Cathcart,*
   980 F.2d 927 (3d Cir. 1992) .............................................................................................. 13

*Grace v. Rosenstock,*
   228 F.3d 40 (2d Cir. 2000) ................................................................................................ 12

*Hawes v. City of Oakland,*
   104 U.S. 450 (1882) .......................................................................................................... 14

*IBEW Local 481 Defined Contribution Plan & Trust v. Winbourne,*
   301 A.3d 596 (Del. Ch. 2023) ................................................................................... *passim*

*J.I. Case Co. v. Borak,*
   377 U.S. 426 (1964) ............................................................................................................ 4

**Cases**                                                                                                **Page(s)**

*Kamen v. Kemper Financial Services, Inc.*,
   500 U.S. 90 (1991) ................................................................................. 15

*Koppel v. 4987 Corp.*,
   167 F.3d 125 (2d Cir. 1999) ..................................................................... 4

*Lentell v. Merrill Lynch & Co., Inc.*,
   396 F.3d 161 (2d Cir. 2005) ..................................................................... 11

*Michelson v. Duncan*,
   407 A2d 211 (Del. 1979) .......................................................................... 18

*Pierce v. Better Holdco, Inc.*,
   22 Civ. 9580 (AT), 2023 WL 6386920 (S.D.N.Y. Sept. 28, 2023) ....................... 16

*RCM Securities Fund, Inc. v. Stanton*,
   928 F.2d 1318 (2d Cir. 1991) .................................................................... 15

*Resnik v. Swartz*,
   303 F.3d 147 (2d Cir. 2002) ..................................................................... 5

*Ross v. Bernhard*,
   396 U.S. 531 (1970) ................................................................................. 14

*Rubenstein v. Ademany*,
   No. 22-2794, 2023 WL 6119810 (2d Cir. Sept. 19, 2023) ............................. 11, 12

*Saxe v. Brady*,
   184 A.2d 602 (Del. Ch. 1962) .................................................................. 17

*Schlick v. Penn-Dixie Cement Corp.*,
   507 F.2d 374 (2d Cir. 1974) ..................................................................... 11, 12

*Seinfeld v. Becherer*,
   461 F.3d 365 (3d Cir. 2006) ..................................................................... 5

*Seinfeld v. Gray*,
   404 F.3d 645 (2d Cir. 2005) ..................................................................... 5

*Solak v. Welch*,
   2019 WL 558877 at *7 n.62 (Del. Ch. Oct. 30, 2019) ................................... 15

*St. Louis Police Retirement System v. Severson*,
   No. 12-cv-5086 YGR, 2012 WL 5270125 (N.D. Cal., Oct. 23, 2012) ................. 10

*Stearns v. Dudley*,
   76 N.Y.S. 2d 106 (Sup. Ct. Onondaga County, 1947) ................................... 18

**Cases**                                                                                      **Page(s)**

*TSC Indus. Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976) ................................................................................ 4

*Unite Here v. Cintas Corp.*,
  2006 WL 2859279 (S.D.N.Y. Oct., 11, 2006) ...................................... 13

*United Paperworkers Int'l Union v. International Paper Co.*,
  985 F.2d 1190 (2d Cir. 1993) ........................................................ 4, 10

*Vides v. Amelio*,
  265 F.Supp. 2d 273 (S.D.N.Y. 2003) ................................................ 11

*Virginia Bankshares, Inc. v. Sandberg*,
  501 U.S. 1083 (1991) ................................................................... 4, 11

*Wilderman v. Wilderman*,
  315 A.2d 610 (Del Ch. 1974) ................................................. 17, 18, 21

*Wilson v. Great Am. Indus., Inc.*,
  979 F.2d 924 (2d Cir. 1992) ............................................................ 12

*Woodford Eurasia Assets Ltd. v. Lottery.com, Inc., C. A. 23-1317*,
  2023 WL 8005621 (D. Del., Nov. 17, 2023) ...................................... 13

*Zucker v. Andreesen, C.A. No. 6014-VCP*,
  2012 WL 2366448 (Del. Ch. June 21, 2012) ...................................... 21

**Statutes and Regulations**

8 Del.C. § 122(5) .......................................................................... 17

15 U.S.C. §78 ............................................................................... 12

15 U.S.C. §78n ........................................................................... 1, 4

15 U.S.C. §78u-4 .......................................................................... 12

15 U.S.C. §§78a-78hh .................................................................... 12

17 C.F.R. §229.402 ................................................................. *passim*

17 C.F.R. §240.14a-3 ....................................................................... 5

17 C.F.R. §240.14a-5 ....................................................................... 9

17 C.F.R. §240.14a-9 ....................................................................... 4

17 C.F.R. §240.14a-101 ................................................................. 3, 5

17 C.F.R. § 229 .............................................................................. 6

**Page(s)**

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ 14

Fed. R. Civ. P. 23.1 ...................................................................................... *passim*

Fed. R. Civ. P. 9 ................................................................................................ 22

Fed. R. Civ. P. 12 ......................................................................................... 21-22

**Other**

*Summary Compensation Table, SEC Release 8732A,*
   2006 WL 2589711 at *22 ....................................................................... 9, 10, 13

Plaintiff Cathy Buch, a stockholder in Coty Inc., a Delaware corporation with its principal place of business in New York, New York, respectfully submits this memorandum of law in opposition to the Defendants' motion to dismiss her Amended Complaint, ECF Document 46.  She also submits the Declaration of her counsel Alexander Arnold Gershon dated January 11, 2024.  This case arises under §14(a) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. §78n(a), and the rules and regulations of the U.S. Securities and Exchange Commission (SEC).

## PRELIMINARY STATEMENT

The Amended Complaint challenges the conduct of the board of directors of Coty for acting in bad faith to award extremely excessive compensation to their fellow board member and CEO Sue Nabi.  The Board members then compounded their misconduct by reporting that compensation in their 2023 Proxy Statement by omitting material information that the SEC's rules and regulations specifically require in penetrating detail.

These SEC requirements are for the purpose of informing the stockholders of the facts concerning and relating to the independence of the individuals standing for election as directors who have the duty of faithfully running Coty.  Congress's purpose in enacting §14(a) was to prevent deceptive or inadequate disclosure in proxy solicitations, to provide stockholders with an explanation of the real nature of the questions for which their vote is sought, and specifically to authorize the SEC to promulgate binding rules and regulations to secure those purposes.

Count I of the Amended Complaint alleges how Defendants' 2023 Proxy Statement violates §14(a).  Defendants violated §14(a) by omitting to disclose information specifically required SEC Reg. S-K, 17 C.F.R. §229.402(b) and (e).  Count I seeks relief in an order nullifying the election and having a new election with a new proxy statement compliant with the

1

SEC's rules and regulations.  In Count II, the Amended Complaint alleges a stockholder's derivative action to recover from the individual defendants for the CEO's excessive compensation.  The stockholder's derivative action in Count II implicates the pre-suit demand provisions of Fed. R. Civ. P. 23.1.  The stockholder's claim in Count I is a direct action, and it does not require a pre-suit demand under Rule 23.1.

The first thing Defendants say is that the Amended Complaint takes the "drastic and unprecedented step" of seeking an order nullifying the election of Coty's board.  As this Memorandum of Law explains, *infra*, this is neither drastic nor unprecedented.  The second thing that Defendants say is that the Amended Complaint makes this request even though it does not allege loss causation.  As this Memorandum of Law explains, *infra*, loss causation is not an element here.

Finally, Defendants argue that the "jumbled and illogical string of accusations involving Ms. Nabi's compensation is not tethered to any legal entitlement to relief."  Def. Memo. 3.  To the contrary, what is jumbled and illogical is Ms. Nabi's extremely excessive compensation, which is so off-the-charts for a company like Coty that it can only be explained by bad faith by the individual Board member defendants, which the hopelessly confused reporting of it in the 2023 Proxy Statement makes it all the worse.

The Amended Complaint presents a tale of misconduct by the Coty board that is so rank that the only explanation is bad faith.  For the reasons explained, the Court should deny the motion to dismiss.

## **STATEMENT OF FACTS**

Defendant Coty Inc. ("Coty") is a Delaware corporation with its principal place of business in the Empire State Building in New York, New York.  It is in the business of

manufacturing, distributing, and marketing cosmetics, fragrances, and other beauty products.  Its fiscal year ends June 30.  Amended Complaint ("AC") ¶4.

The individual defendants are all the members of Coty's board of directors.  Defendant Sue Nabi is also Coty's chief executive officer or CEO.  AC ¶5.

The AC ¶19 alleges that the total compensation from Coty to CEO Nabi exceeds $900 million for the three fiscal years 2021 through 2023.  Defendants agree that she is "highly compensated," Def. Memo. at 1, but they say not that highly.  They find fault with the numbers in AC ¶19, arguing that it "double counts the stock awards."  Def. Memo. 4 n.6.  The exact amount of Nabi's compensation is an issue of fact not determinable on this motion to dismiss.  But Plaintiff disputes Defendants' assertion of double counting and suggests that, at this stage, the amounts of Restricted Stock Units (RSUs) scheduled to vest from 2024 to 2030 were not first counted in the $145,875,000 stock-based awards granted in 2023.  Musoff Decl. Exh. A, 40.  Since they were not counted once, they are not counted double.

In addition, Defendants assert that stock-based awards "are not additional compensation and have no monetary [sic] value to the recipient unless and until they vest," but Defendants do not support this assertion with any authority.  What is more, grants of RSUs are a cost to Coty that are chargeable against its income, and if there is no income, added to net loss.  This, too, is an issue of fact for trial, not a motion to dismiss.

On or about September 21, 2023, Defendants solicited Coty's stockholders to vote for the election of directors at the annual meeting on November 2, 2023.  AC ¶12.  They made this solicitation by means of the 2023 Proxy Statement.  AC ¶16.  SEC Schedule 14A, Item 8(a), 17 C.F.R. §240.14a-101, Item 8(a), requires this proxy statement to disclose the compensation of Defendant Nabi as required by SEC Reg. S-K, Item 402, 17 C.F.R. §229.402.

The Amended Complaint shows that the compensation disclosures in the 2023 Proxy Statement are false or misleading and omit material facts in contravention of SEC Reg. S-K, Item 402, and violate §14(a) of the Exchange Act.

The Amended Complaint also alleges that the directors acted in bad faith in awarding compensation to Defendant and CEO Nabi.

## ARGUMENT

### I.      Count I of the Amended Complaint States a Claim for Relief Under §14(a)

Section 14(a) of the Exchange Act provides that "[i]t shall be unlawful for any person…in contravention of such rules and regulations as the [SEC] may prescribe…to solicit…any proxy or consent or authorization in respect of any security…registered pursuant to …this title."  Securities Exchange Act of 1934, 15 U.S.C. §78n(a).  Rule 14a-9(a) promulgated thereunder provides that:

> No solicitation subject to this regulation shall be made by means of any proxy statement…containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading….

17 C.F.R. §240.14a-9.  "A fact is material for purposes of Rule 14a-9 'if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.'" *United Paperworkers Int'l Union v. International Paper Co.*, 985 F.2d 1190, 1198 (2d Cir. 1993) (quoting *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090 (1991) and *TSC Indus. Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).  A private right of action under Rule 14a-9 is well established.  *J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964); *Koppel v. 4987 Corp.*, 167 F.3d 125, 131 (2d Cir. 1999).

In addition, "[the] omission of information from a proxy statement will violate [section 14(a) of the Exchange Act and Rule 14a-9] if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading."  *Resnik v. Swartz*, 303 F.3d 147, 151 (2d Cir. 2002); *Seinfeld v. Gray*, 404 F.3d 645, 650 (2d Cir. 2005) (same, citing *Resnik*); *Seinfeld v. Becherer*, 461 F.3d 365, 369 (3d Cir. 2006) ("The 'omission of information from a proxy statement will violate [§ 14(a) and Rule 14a-9] if…the SEC regulations specifically require disclosure of the omitted information in a proxy statement.'").  Defendants cite no case that contradicts this statement of the law.  They cite *Bisel v. Acasti Pharma, Inc.*, 2022 WL 4538173 (S.D.N.Y. Sept. 28, 2022), but the Court there held that no relevant SEC regulations mandated the omitted disclosures.  *Id.* *8.  And Rule 14a-3, 17 C.F.R. §240.14a-3, provides that public companies may not solicit stockholders' votes without a proxy statement "containing the information specified in Schedule 14A."

## II.   Coty's 2023 Proxy Statement Violates §14(a) in That It Is False or Misleading Because It Omits to Disclose Facts That the SEC Specifically Requires

Because the 2023 Proxy Statement solicits votes for the election of directors, Schedule 14A, Item 8(a), 17 C.F.R. §240.14a-101, Item 8(a), requires the proxy statement to disclose the compensation of Defendant Nabi, the CEO, in the form and manner as exquisitely detailed in Reg. S-K Item 402, 17 C.F.R. §229.402 (Feb. 27, 2023).  The proxy statement fails to meet that standard.

Specifically, Reg. S-K, Item 402(b)(1)(v) requires that the proxy statement disclose how Coty "determines the amount…for each element to pay."  Reg. S-K, Item 402(b)(2)(v), requires

disclosure of "(w)hat specific items of corporate performance are taken into account in…making compensation decisions."

The element of salary for Defendant Nabi is $3.35 million per year.  AC ¶19(a).  *See also* Musoff Decl. Exh. A at 38, the Summary Compensation Table.  As to her salary the proxy statement represents that "her base salary…would be reviewed and set by the Board or a committee thereof."  AC ¶20, quoting from the 2023 proxy statement's **Narrative Disclosure to Summary Compensation Table and Grants of Plan-Based Awards Table**, a required disclosure of 17 C.F.R. § 229, Item 402(e).  As AC ¶20 alleges, that quote omits how Coty determined that amount and the specific items of corporate performance taken into account in deciding her salary, as Item 402(b)(i)(v) and (2)(v) require.

Defendants argue that the above quotation in AC ¶20 from the 402(e) Narrative on page 40 is "nonsensical," Def. Memo. 10, because it does not quote the remote, unreferenced representation eight pages away, *i.e.*, "We pay salaries…in recognition of individual responsibilities and job performance….consider[ing] external competitive market conditions in addition to total direct compensation targets and personal performance and internal comparisons." Plaintiff submits that neither the language cited in the AC nor in Musoff Exh. A, 40 and Musoff Exh. A, 32, reveals how Coty "determines" the $3.5 million in annual salary each year (Why is it more than double the salaries of the CEOs in Coty peer group? AC ¶25) and what "specific items of corporate performance are taken into account in…making [the] compensation decision" to pay her a salary of $3.5 million, more than double that of Coty's peer group CEOs, AC ¶25.  17 C.F.R. §229.402(b)(1) and (2).

Further specifically, as alleged in AC ¶21, Reg. S-K, Item 402(b)(2)(iii) addresses long-term compensation and requires disclosure of the correlation between the cost to Coty of the

awards and the expected benefits to Coty, and Reg. S-K, Item 402(b)(2)(vi) requires disclosure

of whether discretion can be exercised to award payouts absent attainment of performance goals

or to reduce or increase any payout.  Reg. S-K, Item 402(e) requires disclosure of "any

performance-based conditions."  And Reg. S-K, Item 402(b)(2)(x) requires disclosure of how

gains in prior years were considered in setting later compensation.  Thus, in footnote (2) to the

Table of Plan-Based Awards, Musoff Decl. Exh. A at 40, it states that Coty awarded CEO Nabi

10,416,667 RSUs, "subject to certain vesting conditions and exceptions and…2,083,333

RSUs…subject to the achievement of three-year performance objectives to be determined by the

Board….in the first quarter of fiscal 2024," *i.e.*, September 30, 2023.  ¶21.  All these omissions

violate the specific disclosure requirements of Reg. S-K.  *Resnik v. Swartz*; *Seinfeld v. Gray*;

*Seinfeld v. Becherer*.

Defendants argue that the 2023 proxy statement discloses that Coty conducts a

"Compensation Peer Group analysis…[a] subjective review of NEO individual

performance….[and] several factors…[on page] 34" of the proxy statement.  Those "several

factors" are "[n]otional grants or target awards….adjusted…based on total pool size…and, in

extraordinary circumstances, its review of the NEO's individual overall performance during the

fiscal year."  There is not a word of the correlation of the cost of the awards to the benefit to

Coty.  It says nothing to identify the performance goals or Coty's discretion about adjusting

payouts of the awards.  Def. Memo. 11.  These omissions contravene 17 C.F.R.

§229.402(b)(1)(v), (b)(2)(iii) and (vi).  *Resnik v. Swartz*; *Seinfeld v. Gray*; *Seinfeld v. Becherer*.

Defendants seek to excuse the omission of the performance goals by saying that the

Board has not yet decided those goals.  But Coty may not avoid the required disclosure of Rule

14a-3 "by the artful delay of the action that is the apparent predicate to the required disclosure."

*Allyn Corp. v. Hartford Nat. Corp.*, No. H 81-912 (Cabranes), 1982 WL 1301 at *27 (D. Conn., March 30, 1982).  And although Defendants argue that the 2023 proxy statement at 34 discloses that "the vesting of the RSUs will be subject to discretion" of the Board, Def. Memo. 11-12, the word "discretion" does not appear there in the proxy statement, and Reg. S-K, Item 402(b)(2)(vi) requires disclosure of discretion as to whether Coty can reduce or increase payouts of awards, not whether it has discretion as to vesting.  Thus, an award might vest on a particular date with a predetermined payout.  But what the regulation requires Coty to disclose is whether the Board had the discretion to reduce or increase that payout.  *Resnik v. Swartz*; *Seinfeld v. Gray*; *Seinfeld v. Becherer*.

Defendants further cite *Greenlight Cap., L.P. v. Apple, Inc.*, 2013 WL646547, at *13 (S.D.N.Y. Feb. 22, 2013), where the Court [mis]quoted "Plaintiff's counsel" as "conced[ing] that the SEC "say-on-pay" rules do not require Apple to adopt a formula or rational method for determining executive pay."  Def. Memo. 12.  First of all, the "say-on-pay rules" have no relevance here, for the Amended Complaint does not challenge the say-on-pay vote.  Second, the misquote.  The transcript reveals that the Court said, "I don't think the reg requires a mathematical formula."  Tr. 22:23.  Gershon Declaration, Exhibit.  AC ¶¶10 and 11 cites Reg. S-K, Item 402(b) and (e), concerning the use of formulae in executive pay.  If there is a formula, the proxy statement must disclose it.  There is no mention in the transcript of a "rational method" by Plaintiff.  But to the extent Plaintiff did comment on it, he apparently said the opposite.  As Defendant Apple's counsel, the now late lamented George A. Riley, Esq., said:

> and with regard to what this Court was questioning plaintiffs about, which is these executive VPs who were compensated in a similar manner and he was questioning how can that be, that sounds crazy, sounds irrational.

Tr. 43:18-22.  So Plaintiff's counsel there and here said the opposite of what Defendants here say he said.

### III.    Coty's 2023 Proxy Statement Violates §14(a) in That It Is False or Misleading Because It Omits to Disclose All Compensation in Dollars

Where a proxy statement makes representations about stock-based compensation, it must disclose it in terms of dollars and not just numbers of shares.  The SEC made this point in connection with the Summary Compensation Table, SEC Release 8732A, 2006 WL 2589711 at *22, but because its purpose is to "provide a clearer picture of total compensation," *Id.*, Plaintiff submits that this has broader application than the Summary Compensation Table.  SEC Rule 14a-5(a), Presentation of Information in Proxy Statements, 17 C.F.R. §240.14a-5(a) ("All amounts should be stated in figures.").  *Resnik v. Swartz*; *Seinfeld v. Gray*; *Seinfeld v. Becherer*.

Thus, AC ¶23 alleges that the 2023 Proxy Statement represents that on May 4, 2023, Coty provided CEO Nabi an additional 2,083,333 performance-based RSUs to be granted September 1, 2024, 2025, 2026, and 2027.  But the proxy statement omitted there at page 40 to disclose that if fully realized, CEO Nabi will acquire 20,833,334 shares of Coty stock, which at the price per share of $11.67 on May 4, 2023, is worth approximately $234 million.  It also omits to disclose her new bonus with an annual maximum payout of $6 million.  *Id.*

Defendants argue, Def. Memo. 12, "Reasonable shareholders are capable of doing that basic arithmetic" to derive the 20,822,334 number of shares by reading page 33 much more closely to get another 2,083,333 shares granted in 2023 plus 10,416,667 shares mentioned in the preceding paragraph.  And if shareholders had read the two previous paragraphs, they would have discovered Defendant Nabi's new 6 billion euro bonus.

Plaintiff submits that Defendants' idea of how a proxy statement should disclose such extraordinarily excessive and complicated executive compensation puts too much pressure on

stockholders.  The disclosure in the proxy statement stands in stark contrast to the disclosure of these same facts in Coty's Form 8-K, Musoff Decl. Exhibit B.  There all these facts are revealed in the 8-K's second paragraph, right up front, except for the $234 million.  Of course, Coty did not distribute that Form 8-K to its stockholders, and it did not include that second paragraph in haec verba, in the 2023 Proxy Statement.  So, the Form 8-K is "not charged to the knowledge of the stockholders," but the proxy statement does "challenge…[their] critical wits."  *St. Louis Police Retirement System v. Severson*, No. 12-cv-5086 YGR, 2012 WL 5270125 at *4-6 (N.D. Cal., Oct. 23, 2012) (citing *United Paperworkers Int'l. Union v. Int'l Paper Co.*, 985 F.2d 1190, 1198-200 (2d Cir. 1993)).

Defendants' arguments concerning AC ¶23 emphasize the complexity of CEO Nabi's compensation.  In Rel. 8732A, 2006 WL-2589711 at *5, the SEC said:

> We believe this tabular approach remains a sound basis for disclosure.  However, especially in light of the complexity of and variations in compensation programs, the very formatted nature of those rules has resulted in too many cases in disclosure that does not inform investors adequately as to all elements of compensation.  In those cases investors may lack material information that we believe they should receive….
>
> Under the amendments, compensation disclosure will now begin with a narrative providing a general overview.  Much like the overview that we have encouraged companies to provide with their Management's Discussion and Analysis of Financial Condition and Results of Operations (MD&A), [footnote omitted] the new Compensation Discussion and Analysis calls for a discussion and analysis of the material factors underlying compensation policies and decisions reflected in the data presented in the tables.

The SEC requires detailed compliance with Reg. S-K, Item 402, for it governs the CD&A, the beginning narrative to disclose the "material factors underlying compensation policies and decisions."  Defendants have failed to meet these requirements.  *Resnik v. Swartz*; *Seinfeld v. Gray*; *Seinfeld v. Becherer*.

The disclosures of Coty's complex CEO compensation were confusing.  AC ¶19.

Defendants cite *Vides v. Amelio*, 265 F.Supp. 2d 273, 280 (S.D.N.Y. 2003) for the argument that

a "confusing" proxy statement does not violate §14(a).  But actually what the Court held there

was that the proxy statement was "carefully written," not confusing, and quite comprehensible.

Plaintiff submits that a confusing proxy statement that challenges the stockholders' critical wits

does indeed violate §14(a).  *Virginia Bankshares v. Sandberg*, 501 U.S. 1083, 1097 (1991).

### IV.    Loss Causation Is Not An Element of the Claim in Count I

The Defendants do not challenge transaction causation, only loss causation.  But loss

causation is not an element of the instant case because Count I does not seek to recover damages

for economic harm.  AC ¶26 alleges:

> The 2023 proxy statement in contravention of the SEC proxy rules and
> regulations caused the election of the directors on November 2, 2023, but it did
> not cause economic loss.  So, loss causation is not a requirement here.

The financial and economic harm alleged in the complaint is in Count II, the stockholders'

derivative claim.

The Second Circuit considered loss causation in *Schlick v. Penn-Dixie Cement Corp.*, 507

F.2d 374, 382 (2d Cir. 1974) as necessary "to show damages."  *Schlick* involved a challenge to a

proxy statement seeking approval of a corporate merger.  The Court held that loss was

"axiomatic" because of a "disadvantageous merger ratio."  *Id*. at 381.  Most recently, in

*Rubenstein v. Ademany*, No. 22-2794, 2023 WL 6119810 at *4 (2d Cir. Sept. 19, 2023), the

Second Circuit held that loss causation meant that the "misrepresentation or omission caused the

economic harm for which the plaintiff seeks relief."  The Second Circuit had previously held,

"The PSLRA has codified this judge-made requirement."  *Lentell v. Merrill Lynch & Co., Inc.*,

396 F.3d 161, 172 (2d Cir. 2005) (thusly, "In any private action arising under this chapter, the

plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused *the loss for which the plaintiff seeks to recover damages*.  15 U.S.C. §78u-4(b)(4)") (italics added)).

Where the Court in *Rubenstein* addressed misrepresentation or omissions in a proxy statement as having "caused the economic harm," 2023 WL 6119810 at *4, it cited *Grace v. Rosenstock*, 228 F.3d 40, 47-48 (2d Cir. 2000) and *Wilson v. Great Am. Indus., Inc.*, 979 F.2d 924, 931 (2d Cir. 1992).  Both *Grace* and *Wilson* were challenges to proxy statements soliciting stockholders' votes to approve corporate mergers where the economic harm was axiomatic, as the *Schlick* court held.  By contrast, in *Rubenstein*, the challenged proxy statement did not seek approval of a corporate merger or any kind of financial transactions.

The proxy statement under challenge here did not seek approval of a financial transaction.  In *Schlick*, the Court in a footnote, 507 F.2d at 382 n.14, cited Note, Private Actions for Proxy Violations, 80 Yale L.J. 107 (1970) (causation and liability in private actions for proxy violations).  That Note at 107 n.2 states:

> Proxy statements are sent out by management in connection with a variety of projected corporate actions: mergers, elections of directors, and sales of assets, for example.  The purpose of a proxy statement is to apprise the shareholder that certain action is being considered and to provide sufficient information for him to register his informed approval or disapproval.  Deceptive practices led to federal regulation of many proxy solicitations in 1934, and Section 14, 15 U.S.C. §78(n) (1964), of the Securities Exchange Act, 15 U.S.C. §§78a-78hh (1964), now prohibits the solicitation of proxies in contravention of the rules and regulations issued by the Securities and Exchange Commission.

The elaborate regulation scheme includes proxy statements for the election of directors even though such elections do not authorize financial or economic harm.  The stockholders' right to cast an informed vote for the corporate directors is a fundamental right that the courts protect.  *EMAK Worldwide, Inc. v. Kurz*, 50 A.3d 429, 433 (Del. 2012); *Berger v. Adkins*, C.A. No. 2022-

12

0487-KSJM, 2023 WL 5162408 at *4 n.32 (Del. Ch. Aug. 8, 2023).  The SEC's regulations including Reg. S-K (Item 402) are for the purpose of protecting that right by providing "material information regarding the independence of directors."  *Unite Here v. Cintas Corp.*, 2006 WL 2859279 at *5 (S.D.N.Y. Oct., 11, 2006) (citing SEC Release 8732A, Executive Compensation and Related Person Disclosure, 2006 WL 2759711 at *7).

Defendants misplace their reliance of *Gen. Elec. Co. by Levit v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992).  There the Court held that "damages are recoverable under Section 14(a) only" where the votes authorize the "pecuniary injury for which recovery is sought."  This complaint does not contain such a claim, so loss causation is not a requirement.

Def. Memo. 14 also cites *Rubenstein* to say that it is "incorrect as a matter of law" that loss causation is sufficiently pled where "misleading proxy statements…led to the election of directors."  That quote from *Rubenstein* is so far out of context that it is totally false.  It comes from footnote 6 at *4, where the Court explained the improper "conflate[ion of] loss causation with transaction causation."  As the Court was saying, it was the conflation that was "incorrect," where the alleged loss was not something that the stockholders voted to approve.

Finally, Defendants argue that the complaint seeks drastic and unprecedented relief in seeking to *nullify the election of Coty's directors*, saying that they are "unaware of any court taking such a drastic step."  Def. Memo. 14.  In *Edelman v. Salomon*, 559 F.Supp. 1178, 1184-85 (D. Del. 1983) the Court held:

> The final relief, footnote omitted, which this Court and the Delaware Courts have traditionally given in situations of this kind, has been a decree nullifying the corporate action taken on the basis of management's proxies.  [citing cases].

Also, in *Woodford Eurasia Assets Ltd. v. Lottery.com, Inc.*, C. A. 23-1317, 2023 WL 8005621 at *4 (D. Del., Nov. 17, 2023), plaintiff sought a preliminary injunction against a stockholders' vote

13

to issue new shares that would change control of the company.  The Court held, citing prior cases, "It is well within the equitable power of the Court to void the results of a stockholders' vote and require both a new solicitation of proxies and a second shareholder vote."

Plaintiff submits that this Court should nullify the November 2 vote and order a new proxy statement and a new vote.

### V.    Count II of the Amended Complaint States a Claim for Relief as a Stockholder's Derivative Action

The United States Supreme Court explained the dual nature of a stockholder's derivative action in *Ross v. Bernhard*, 396 U.S. 531 (1970) as an action by a corporate stockholder to hold accountable faithless fiduciaries such as officers and directors and also outsider third parties:

> The common law refused…to permit stockholders to call corporate managers to account in actions at law.  The possibilities for abuse, thus presented, were not ignored by corporate officers and directors.  Early in the 19th century, equity provided relief both in this country and in England.... [T]he remedy in this country… provided redress not only against faithless officers and directors but also against third parties who had damaged or threatened the corporate properties and whom the corporation through its managers refused to pursue.  The remedy made available in equity was the derivative suit, viewed in this country as a suit to enforce a corporate cause of action against officers, directors, and third parties…. Thus the dual nature of the stockholder's action: first, the plaintiff's right to sue on behalf of the corporation and, second, the merits of the corporation claim itself.  [Footnotes omitted].

396 U.S. at 534-35; *Espinoza v. Dimon*, 797 F.3d 229, 233-34 (2d Cir. 2015) (purpose of derivative action is for individual shareholder to protect corporation from faithless directors and managers, *citing Ross*).

The pre-suit demand rule was formulated in *Hawes v. City of Oakland*, 104 U.S. 450 (1882) and then promulgated as a precondition to a stockholder's derivative action as Equity Rule 94, which became Equity Rule 27, then Fed. R. Civ. P. 23(b) and is now Fed. R. Civ. P. 23.1.  *Ross v. Bernhard*, 396 U.S. at 534 n.4.

Fed. R. Civ. P. 23.1 is a procedural rule that requires a stockholder's derivative complaint to allege whether the plaintiff made a pre-suit demand on the board or the reasons for not making a demand.  The substance of the law excusing such demand is the law of the state of incorporation, *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90 (1991), in this case Delaware.  Plaintiff did not make a pre-suit demand on the grounds of futility.  AC ¶31.

In *RCM Securities Fund, Inc. v. Stanton,* 928 F.2d 1318 (2d Cir. 1991), the Second Circuit analyzed the reasons why a stockholder should not make a pre-suit demand on the board of a Delaware corporation, stating in part:

> If no demand is made, the derivative action may challenge the underlying transaction, and the complaint will not be dismissed because of the business judgment rule if it has alleged a prima facie breach of a fiduciary obligation. Once a demand is made, however, the challenge under Delaware law must be not to the underlying transaction, but to the board's decision not to bring the lawsuit…. Delaware law thus substantially alters the nature of a derivative plaintiff's claim where demand has been made and conversely gives shareholders considering litigation good reason not to make a demand.

928 F.2d at 1328.  The Delaware Chancery Court acknowledges the same thing.  *IBEW Local 481 Defined Contribution Plan & Trust v. Winbourne*, 301 A.3d 596, 620 n.6 (Del. Ch. 2023), *citing Solak v. Welch*, 2019 WL 558877 at *7 n.62 (Del. Ch. Oct. 30, 2019).

The Amended Complaint alleges that Plaintiff made no pre-suit demand, AC ¶31, and it states the reasons why.  It alleges that "all the directors authorized Defendant Nabi's compensation."  AC ¶32.  It alleges that all the directors thereby acted in "bad faith" because on its face the "magnitude" of her compensation "is irrationally excessive."  AC ¶33.  It also alleges that Defendants added "misdisclosures of it, in contravention of the SEC's proxy rules and regulations," AC ¶33, which have the force and effect of law.  *Batterton v. Francis,* 432 U.S. 416, 425 n.9 (1977).

In *City of Fort Myers Gen. Employees' Pension Fund v. Haley*, 235 A.3d 702, 722 n.73 (Del. 2020), the Delaware Supreme Court held that where CEO Haley stood to receive an increase in his compensation from $19.4 million for the previous three years to $92.5, it was a material, "disproportionate increase," and it reversed the Chancellor's dismissal of the case against him.  In *IBEW Local 481 v. Winbourne, supra*, 301 A.3d at 617-19, the same Court held that if the board acts in bad faith it cannot consider a demand, and therefore demand is excused as futile.  Bad faith is a state of mind, which may be alleged in the complaint.  *Id.* at 619.  Bad faith is not directly observable, but the Court can infer it from "external indications" such as "how extreme the decision appears to be."  *Id.* at 620.  The Court can also infer bad faith from the board's "conscious disregard for...[its] responsibilities."  *Id.* at 622.  The Court in *IBEW Local 481* held:

> "It makes no difference the reason why the director intentionally fails to pursue the best interests of the corporation." (Fn. 12, "[R]egardless of his motive, a director who consciously disregards his duties to the corporation and its stockholders may suffer a personal judgment for monetary damages for any harm he causes," even if for a reason "other than personal pecuniary interest.").  Bad faith can be the result of "any human emotion [that] may cause a director to [intentionally] place his own interests, preferences or appetites before the welfare of the corporation," including greed, "hatred, lust, envy, revenge, … shame or pride." (Fn. 13, "The reason for the disloyalty (the faithlessness) is irrelevant, the underlying motive (be it venal, familial, collegial, or nihilistic) for conscious action not in the corporation's best interest does not make it faithful, as opposed to faithless.").

301 A.3d at 623.  The Court can also consider whether there were also known violations of positive law.  *Id.* at 621, 622 n.10.  All of these indications are present here, *see* AC ¶33, and they apply "even…[if] the board had no financial interest" in the transactions.  *Id.* at 622 n.10.

Defendants argue that demand excusal must be shown on a director-by-director basis, *citing Pierce v. Better Holdco, Inc.*, 22 Civ. 9580 (AT), 2023 WL 6386920 at *9 (S.D.N.Y. Sept. 28, 2023).  The Court there found that the complaint brought a stockholder's derivative action

for breach of fiduciary duty among other claims and alleging harassment of the plaintiff as an employee.  The Court also found that the complaint alleged pre-suit demand excusal in a "conclusory fashion that the Board as an entity was compromised by a lack of independence and a risk of liability."  *Pierce* is not authority for dismissing this case.  Here, each Coty director did the exact same things at the exact same times, which the Amended Complaint alleges in great detail.  Thus, the AC more than sufficiently alleges why each director is not capable of responding to a pre-suit demand.

Although corporate boards have discretion in authorizing the CEO's compensation, that discretion has its limits.  In *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) the Court held:

> To be sure, directors have the power, authority and wide discretion to make decisions on executive compensation.  *See 8 Del.C. § 122(5)*.  As the often-cited Court of Chancery decision by Chancellor Seitz in *Saxe v. Brady* warns, there is an outer limit to that discretion, at which point a decision of the directors on executive compensation is so disproportionately large as to be unconscionable and constitute waste.  De*l.Ch.*, 184 A.2d 602, 610 (1962); se*e Grimes*, 673 A.2d at 1215 (noting that compensation decisions by an independent board are protected by the business judgment rule "unless the facts show that such amounts, compared with the services to be received in exchange, constitute waste or could not otherwise be the product of a valid exercise of business judgment") (citing *Saxe,* 184 A.2d at 610); *see also* Marino, *supra* note 49, at 1237-45.

*Id.* at 262 n.56.  The Marino note observes that it is individual stockholders who are most active in policing executive compensation, not institutions.

Courts have developed standards for the determination of what is reasonable compensation for the CEO.  Such standards include what other executives similarly situated receive, the ability of the CEO, the relation of the compensation to the size and success of the corporation, whether increases in compensation are geared to increases in the value of the CEO services, the amount compared to the compensation of the other executives in the corporation, and other relevant facts and circumstances.  *Wilderman v. Wilderman*, 315 A.2d 610, 615 (Del

Ch. 1974); *Gallin v. National City Bank*, 273 N.Y.S. 87, 114 (Sup. Ct. New York County, 1934); *Stearns v. Dudley,* 76 N.Y.S. 2d 106, 127 (Sup. Ct. Onondaga County, 1947)).  ("No finer standard of the measurement of compensation to executive officers has been presented than the yardstick laid down by Mr. Justice Dore" in *Gallin*.)  And directors may not "by way of excessive salaries and other devices, oust the minority of a fair return on its investment." *Michelson v. Duncan,*  407 A2d 211, 217 (Del. 1979) (citation omitted).

Defendant Nabi's compensation meets all of the foregoing standards for being unreasonable.

### A.  <u>The Law Excuses Pre-Suit Demand as to All the Members of the Board</u>

AC ¶32 alleges that Coty's Principles of Corporate Governance provides that the full board's "core responsibilities include assessing the performance of the CEO and other…senior…manage[rs] and setting their compensation."  Nothing in Defendants' submissions to this Court suggests that there was any director who did not participate in those decisions.  Even if Defendant Nabi did not participate in the board's action to approve her own compensation, those board members who did approve it acted in bad faith in approving her "remuneration, the magnitude of which, on its face, is irrationally excessive."  AC ¶33.  It meets all the standards for exceeding reasonable compensation under *Wilderman v. Wilderman*; *Gallin v. National City Bank*; and *Michelin v. Duncan*.

Delaware law excuses pre-suit demand upon a director where the director acts in bad faith in approving the challenged act.  *See City of Fort Myers v. Haley, supra,* 235 A.2d 702, and *IBEW Local 481 v. Winbourne, supra,* 301 A.2d 596.  It also excuses pre-suit demand upon a director who is interested in the act.  *Id.*, 301 A.2d at 618.  Defendant Nabi received the material benefits of the board's award of compensation to her, so the law excuses pre-suit demand on her.

All of the remaining directors acted in bad faith in approving her compensation and in misreporting it in the 2023 proxy statement, which excuses pre-suit demand on them.

The Amended Complaint ¶19 alleges that Defendant Nabi's annual salary is $3.3 million and her total compensation for three years exceeded $900 million.  Defendants argue that it "did not 'exceed[] $900 million,'" Def. Memo. 4 n.6, but they do not quantify a different amount.  On a motion to dismiss under Rule 23.1, "the Court does not weigh the evidence, and must draw all reasonable inferences in the plaintiff's favor."  *IBEW Local 481*, 301 A.3d at 617-18.  These amounts for Defendant Nabi dwarf the compensation of all of the CEOs of her peer group companies.  AC ¶25.  The highest of the peers was Proctor and Gamble where the annual salary was less than half of hers or $1.6 million, and the three year total was $52 million.  As to the size of Coty, its $12 billion is not large.  While $12 billion is a lot of money for an individual person to have, for a business corporation it is not.  Coty's peers Proctor and Gamble had total assets of $120 billion at year end 2023, and Johnson & Johnson had total assets of $187 billion at year end 2023, and they each pay their CEO much less.  AC ¶25.  Coty's $12 billion in assets do not justify paying its CEO ten times more than its peers that are ten times Coty's size pay.

As to Coty's success, for the fiscal years 2023, 2022, and 2021, its aggregate net income was $581 million, somewhat more than half of Defendant Nabi's compensation, which ousted the minority of a fair return on its investment.  AC ¶24.  *Michelson v. Duncan*.  And her three-year total compensation was 50 times that of each of Coty's other NEOs.  AC ¶24.

Based on the standards that courts have developed in measuring the reasonableness of executive compensation, the pay to Defendant Nabi is irrational.  And in reporting her compensation in the 2023 Proxy Statement, Defendants were faced with requirements of positive law in the form of SEC Reg. S-K, Item 402, to disclose how they determined those amounts in

relation to the compensation of the CEOs in Coty's peer group.  But they violated the law by omitting those disclosures.  They further omitted to relate her compensation to Coty's performance, AC ¶20, ¶21, and to disclose if Coty had the discretion to increase the payouts of the stock awards of 2021 and 2023 when those awards vested in later years extending to 2030. AC ¶21.  *Resnik v. Swartz*; *Seinfeld v. Gray*; *Seinfeld v. Becherer*.

Defendants seek to justify Defendant Nabi's compensation by repeatedly arguing that the stockholders approved it in advisory say-on-pay votes.  Def. Memo. 2, 5, 7, 22-23.  But say-on-pay votes have no effect on the Amended Complaint's challenge to Defendant Nabi's compensation or the Defendant directors' compliance with their fiduciary duties.  *Garfield v. Allen*, 277 A.3d 296, 354-57 (Del. Ch. 2022) (say-on-pay not ratification under Delaware law and not binding in effect under federal law).

Defendants also argue that Defendant Nabi's compensation, such as her award of 30,000,000 RSUs on June 30, 2021 is an "alignment of incentives" meaning that she would be paid less if Coty performed poorly.  Def. Memo. 22.  That award cost Coty Two Hundred Million Dollars ($280,000,000)!  AC ¶19(c).  That cost is the expense to Coty regardless of how it performs or how many shares are paid out.  The same is true with the 2023 RSUs awarded on May 4, 2023, AC ¶19(d) at a cost of $145,875,000, and the other additional awards to be made in 2024 through 2027.  No matter how poor the performance of Coty and Nabi, the cost to Coty is $280 million plus $145 million or $425 million, plus the four years from 2024 through 2027.

Defendants also seek to justify her compensation on the grounds that she is "one of the most successful CEOs in the beauty industry," Def. Memo. 1, a "sought-after CEO candidate," Def. Memo. 22, who reclaim[ed] [Coty's] status as a global beauty powerhouse."  Def. Memo. 4. These might be heartfelt beliefs, but they sound like after-the-fact justifications.  Considering the

staggering amounts involved, especially in light of Coty's peer group, it is astonishing that Defendants have considered no independent factual analyses by business or securities analysts to confirm or even marginally support the compensation decisions that the board made.  And speaking of securities, while Defendants say that Coty's stock reached the market price of $12.28 per share on September 21, 2023, Def. Memo. 4, its stock price was in the range of $28 to $30 per share in 2015-2016.  It seems Coty has a way to go before actually reclaiming a powerhouse status.

Defendants further argue that "Ms. Nabi's compensation as compared to 'her peers' or 'Coty's other NEOs' is inconsequential as a matter of law." Def. Memo. 24.  Defendants invoke "a matter of law," but they cite no case.  Instead they rely on *Zucker v. Andreesen*, C.A. No. 6014-VCP, 2012 WL 2366448 at *10 (Del. Ch. June 21, 2012), which does not mention peers. In *Zucker*, plaintiff conceded the independence of the board and argued that the $40 million severance payment was "just too much." *Id*. at *10.  Here, the Amended Complaint demonstrates that the board acted in bad faith and that $900 million was way too much.  *Zucker* involved a severance payment of $40 million.  Defendants quote *Zucker* to say, "[T]he size of executive compensation for a large public company in the current environment often involves large numbers."  But the company in *Zucker* was Hewlett-Packer Company, which then had total assets of approximately $120 billion.  The comparison to $12 billion Coty is misplaced. Moreover, the authorities *Brehm v. Eisner, Wilderman v. Wilderman*, and *Gallin v. National City Bank* show that, as a matter of law, Ms. Nabi's peers are of major consequence.

**B.  The Stockholder's Derivative Claim in Count II States a Claim for Relief**

Where, as here, Count II of the Amended Complaint pleads more than sufficient facts to show that pre-suit demand is excused under Rule 23.1, it sustains a claim for relief under Rule

12(b)(6).  *IBEW Local 481*, 301 A.3d at 632.  And Defendants do not assert that Count II fails to comply with Rule 9(b).

## **CONCLUSION**

The Court should deny Defendants' motion to dismiss.

Dated:  January 11, 2024                    **BARRACK, RODOS & BACINE**

By:  */s/ A. Arnold Gershon*
     A. Arnold Gershon
     640 Eighth Avenue, 10th Floor
     New York, NY  10036
     Tel.: (212) 688-0782
     Fax: (212) 688-0783
     Cell: (917) 621-7998
     agershon@barrack.com

*Attorneys for Plaintiff*