UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| CATHY BUCH, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| MARIA ASUNCION ARAMBURUZABALA | : |
| LARREGUI, BEATRICE BALLINI, | : |
| JOACHIM CREUS, OLIVIER GOUDET, | : |
| PETER HARF, JOHANNES P. HUTH, ANNA | : |
| ADEOLA MAKANJU, SUE NABI, ISABELLE | : |
| PARIZE, LUBOMIRA ROCHET, ROBERT | : |
| SINGER, and COTY INC., | : |
| Defendants. | : |

23-cv-8854 (DEH)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

Scott D. Musoff
Lauren E. Aguiar
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
scott.musoff@skadden.com
lauren.aguiar@skadden.com

Paul J. Lockwood (*pro hac vice* pending)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Facsimile: (302) 651-3005
paul.lockwood@skadden.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

I.    PLAINTIFF FAILS TO IDENTIFY ANY MATERIALLY MISLEADING
      STATEMENTS OR OMISSIONS. ................................................................................... 2

II.   PLAINTIFF'S FAILURE TO PLEAD LOSS CAUSATION IS FATAL TO HER
      SECTION 14(a) CLAIM. ................................................................................................. 6

III.  PLAINTIFF'S DERIVATIVE BAD FAITH CLAIM SHOULD BE DISMISSED
      FOR FAILURE TO SUFFICIENTLY ALLEGE DEMAND FUTILITY. ........................ 7

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**CASES**                                                                 Page(s)

*Allyn Corp. v. Hartford National Corp.*,
    No. 81 Civ. 912, 1982 WL 1301 (D. Conn. Mar. 30, 1982)...............................................5

*Bisel v. Acasti Pharma, Inc.*,
    No. 21 Civ. 6051 (KPF), 2022 WL 4538173 (S.D.N.Y. Sept. 28, 2022)...........................3

*Brehm v. Eisner*,
    746 A.2d 244 (Del. 2000) ..................................................................................................9

*City of Fort Myers General Employees' Pension Fund v. Haley*,
    235 A.3d 702 (Del. 2020) ..................................................................................................9

*Colbert v. Rio Tinto PLC*,
    824 F. App'x 5 (2d Cir. 2020).............................................................................................2

*In re Curaleaf Holdings Securities Litigation*,
    519 F. Supp. 3d 99 (E.D.N.Y. 2021) .................................................................................4

*Edelman v. Salomon*,
    559 F. Supp. 1178 (D. Del. 1983) .....................................................................................7

*Furlong Fund v. VBI Vaccines, Inc.*,
    No. 14-Cv-9435 (SHS), 2016 WL 1181710 (S.D.N.Y. Mar. 25, 2016)...........................3

*Garfield ex rel. ODP Corp. v. Allen*,
    277 A.3d 296 (Del. Ch. 2022)..........................................................................................10

*Gonzalez v. Ward*,
    No. 253,2003, 2004 WL 77862 (Del. Jan. 15, 2004) ........................................................9

*Greenlight Capital, L.P. v. Apple, Inc.*,
    No. 13 Civ. 900(RJS), 2013 WL 646547 (S.D.N.Y. Feb. 22, 2013) .............................3, 4

*Kennecott Copper Corp. v. Curtiss-Wright Corp.*,
    584 F.2d 1195 (2d Cir. 1978)............................................................................................4

*Pierce v. Better Holdco, Inc.*,
    No. 22 Civ. 4748 (AT), 2023 WL 6386920 (S.D.N.Y. Sept. 29, 2023)...........................10

*Resnik v. Swartz*,
    303 F.3d 147 (2d Cir. 2002)..............................................................................................2

*Rubenstein ex rel. Jefferies Financial Group Inc. v. Adamany*,
    No. 22-2794, 2023 WL 6119810 (2d Cir. Sept. 19, 2023) ............................................1, 6

*Sable v. Southmark/Envicon Capital Corp.*,
    819 F. Supp. 324 (S.D.N.Y. 1993) ...................................................................6

*Seinfeld v. Becherer*,
    461 F.3d 365 (3d Cir. 2006)....................................................................1, 2

*Seinfeld v. Gray*,
    404 F.3d 645 (2d Cir. 2005)............................................................................2

*St. Louis Police Retirement System v. Severson*,
    No. 12-CV-5086 YGR, 2012 WL 5270125 (N.D. Cal. Oct. 23, 2012)............................6

*Telxon Corp. v. Meyerson*,
    802 A.2d 257 (Del. 2002) ..............................................................................9

*United Food & Commercial Workers Union v. Zuckerberg*,
    262 A.3d 1034 (Del. 2021) ........................................................................9, 10

*Vides v. Amelio*,
    265 F. Supp. 2d 273 (S.D.N.Y. 2003) ..............................................................6

*Wilderman v. Wilderman*,
    315 A.2d 610 (Del. Ch. 1974).........................................................................9

*Woodford Eurasia Assets Ltd. v. Lottery.com, Inc.*,
    No. 23-1317, 2023 WL 8005621 (D. Del., Nov. 17, 2023).....................................7

*Zappia v. Myovant Sciences Ltd.*,
    No. 23-CV-8097 (JSR), 2023 WL 8945267 (S.D.N.Y. Dec. 28, 2023)............................2

## STATUTES AND REGULATIONS

15 U.S.C. § 78n(a) ..............................................................................1, 6

15 U.S.C. § 78u-4(b) .........................................................................1, 10

15 U.S.C. § 78u-4(c) ................................................................................1

17 C.F.R. § 229.402 .....................................................................1, 2, 3, 4

17 C.F.R. § 240.12b-2 ..............................................................................5

Defendants[1] respectfully submit this reply memorandum in further support of their motion to dismiss the Amended Complaint with prejudice pursuant to Rules 9(b), 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure and the PSLRA (ECF 47).[2]

## PRELIMINARY STATEMENT

Plaintiff's Answering Brief, (ECF 51, "AB"), fails to rebut the grounds for dismissal set forth in the Opening Brief.[3]  Plaintiff abandons her claims with respect to several disclosures challenged in the Amended Complaint and supports the rest of her case with citation to inapposite or contradictory case law.  (*See, e.g.,* AB at 5 (citing *Seinfeld v. Becherer,* 461 F.3d 365, 375 (3d Cir. 2006) (explicitly noting that the same Plaintiff's counsel as here has "been singularly unsuccessful in their effort to change the law on proxy solicitations, particularly as to the valuation of stock options.")).)  Plaintiff also cannot overcome the Second Circuit's controlling decision requiring loss causation to be pled on a Section 14(a) claim, even for claims seeking injunctive relief.  *Rubenstein ex rel. Jefferies Fin. Grp. Inc. v. Adamany*, No. 22-2794, 2023 WL 6119810 (2d Cir. Sept. 19, 2023).  Plaintiff also fails to satisfy the "heightened" and "stringent" standards for pleading demand futility.  In effect, Plaintiff asks this Court to decide the amount of

---

[1] Unless otherwise noted, defined terms shall have the same definitions and exhibits shall have the same numbering as set forth in Defendants' Opening Brief (ECF 48, "OB").  Each exhibit is attached to the Declaration of Scott D. Musoff at ECF 49.

[2] Plaintiff requested oral argument in her Answering Brief.  Defendants take no position on Plaintiff's request.

[3] The PSLRA, 15 U.S.C. § 78u-4(c), requires that "[i]n any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure . . . [and] [i]f the court makes a finding . . . that a party or attorney violated any requirement of Rule 11(b) . . . the court shall impose sanctions on such party or attorney . . . [and] shall adopt a presumption that the appropriate sanction . . . for substantial failure of any complaint to comply with any requirement of Rule 11(b) . . . is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action."

compensation Coty's CEO should receive, which runs afoul of Delaware's deference to corporate boards on such matters.

I.    **PLAINTIFF FAILS TO IDENTIFY ANY MATERIALLY MISLEADING STATEMENTS OR OMISSIONS.**

The Amended Complaint identifies five disclosures in the Proxy (Ex. A) it claims contain material misstatements and/or omissions in violation of Item 402 and Section 14(a).  (AC ¶¶ 19, 20, 21, 23, 25.)  Defendants' Opening Brief explains, in turn, why each disclosure is adequate under SEC Rules and not misleading.  (OB at 9-13.) Plaintiff, in opposition, addresses only the disclosures challenged in paragraphs 20, 21 and 23 of the Amended Complaint.  (AB at 5-11.) Plaintiff's claims with respect to the disclosures challenged in paragraphs 19 (the total amount of Ms. Nabi's compensation) and 25 (the use of international comparators in Coty's peer group) are therefore waived.[4]

The remaining challenged disclosures fail to state a claim for the reasons set forth below.[5]

*First*, with respect to the disclosure in paragraph 20 of the Amended Complaint related to Ms.

---

[4]    Plaintiff also fails to contest the application of the PSLRA's heightened pleading standard. (OB at 8); *Zappia v. Myovant Scis. Ltd.*, 23 Civ. 8097 (JSR), 2023 WL 8945267, at *2 (S.D.N.Y. Dec. 28, 2023) ("[T]he Private Securities Litigation Reform Act's provisions requiring specificity apply in assessing the sufficiency of the pleadings" on a Section 14(a) claim).  Further, Plaintiff does not address Defendants' argument that Plaintiff's reliance on the Proxy itself for all of the information used in the Amended Complaint weighs in favor of the Proxy's adequacy.  (OB at 9.) Each of these points therefore ought to be deemed conceded. *Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020) ("As a general matter, district courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage.")

[5]    Plaintiff cites three cases—each of which affirmed dismissal of claims brought by Plaintiff's counsel—for the proposition that "[the] omission of information from a proxy statement will violate [section 14(a) of the Exchange Act and Rule 14a-9] if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading."  (AB at 5 (citing *Resnik v. Swartz*, 303 F.3d 147, 151 (2d Cir. 2002); *Seinfeld v. Gray*, 404 F.3d 645, 650 (2d Cir. 2005); and *Becherer*, 461 F.3d 365, 369).)  Defendants do not contest this statement of
*(cont'd)*

Nabi's base salary, Plaintiff contends that the Proxy "omits how Coty determined that amount and the specific items of corporate performance taken into account in deciding her salary, as Item 402(b)(i)(v) and (2)(v) require." (AB at 6.) However, as Defendants explained, Item 402 "does not impose fiduciary duties or require certain methods for determining compensation." *Greenlight Cap., L.P. v. Apple, Inc.,* No. 13 Civ. 900 (RJS), 2013 WL 646547, at *11 (S.D.N.Y. Feb. 22, 2013).[6] Here, the Proxy explains that Coty took specific items of corporate performance into account in setting Ms. Nabi's salary, such as "external competitive market conditions in addition to total direct compensation targets and personal performance and internal comparisons," and further discloses that the Company holds NEOs "accountable for the successful implementation of our multi-year transformation plan and deleveraging initiatives, as well as the development and execution of our ambitious global business strategy." (Proxy at 32.) Plaintiff argues that these disclosures, located "eight pages away" from the portion of the Proxy quoted in paragraph 20 of the Amended Complaint, are "remote" and "unreferenced." (AB at 6.) This does not render them misleading because the Proxy must be read "as a whole." (OB at 11); *Bisel*, 2022 WL 4538173, at *10 (S.D.N.Y. Sept. 28, 2022); *Furlong Fund LLC v. VBI Vaccines, Inc.,* No. 14-Cv-9435 (SHS), 2016 WL 1181710, at *3 (S.D.N.Y. Mar. 25, 2016). Plaintiff's argument that the Proxy omits how Coty "determines" Ms. Nabi's salary is wrong on the facts—the above quote provides

---

law; Plaintiff's claim ought to be dismissed because the Proxy is in full compliance with applicable SEC regulations. Plaintiff's distinction of *Bisel v. Acasti Pharma, Inc.*, No. 21 Civ. 6051 (KPF), 2022 WL 4538173 (S.D.N.Y. Sept. 28, 2022) is similarly unconvincing because while "the Court there held that no relevant SEC regulations mandated the omitted disclosures," (AB at 5), the same is true here.

[6] Internal alterations, citations, ellipses, and quotation marks have been omitted and all emphases have been added, unless otherwise indicated.

that information—and wrong on the law.  SEC rules do "not require [Coty] to adopt a formula or rational method for determining executive pay."  *Greenlight Cap.*, 2013 WL 646547, at *13.

*Second*, with respect to the disclosure challenged in paragraph 21 of the Amended Complaint, Plaintiff argues that it violates Item 402 because the Proxy does not state whether "discretion" can be used in setting Ms. Nabi's long-term compensation as purportedly required by Item 402(b)(2)(vi) and does not disclose the "correlation between the cost to Coty" and the expected benefits, as purportedly required by Item 402(b)(2)(iii).  (AB at 6-7.)  However, as Defendants explained in their Opening Brief, the Proxy disclosed that the award of PRSUs to Ms. Nabi will be "subject to the achievement of three-year performance objectives *to be determined by the Board*."  (OB at 18 (emphasis added)).  This indicates that discretion will be used in determining performance objectives and use of the "magic word" "discretion" is not required.  *See Kennecott Copper Corp. v. Curtiss-Wright Corp.*, 584 F.2d 1195, 1200 (2d Cir. 1978) ("[N]it-picking should not become the name of the game . . . There is no requirement that a material fact be expressed in certain words or in a certain form of language"); *In re Curaleaf Holdings Sec. Litig.*, 519 F. Supp. 3d 99, 107 (E.D.N.Y. 2021) ("There is no requirement that a [c]ompany disclose its risk in any magic words preferred by plaintiffs.")

Further, as to Item 402(b)(2)(iii), the Proxy explains a "correlation" between the award and Coty's expected benefit, in that Coty's long-term incentive plan aims to "align our executives' interests with stockholder interests" and "drive improved operating and financial results reflected in improved term business performance goals and sustainable growth."[7]  (Proxy at 32.)  Citing *Allyn Corp.*, Plaintiff next argues that Coty cannot avoid disclosure of undecided future goals for

---

[7]   Item 402(b)(2)(iii) also specifically states that registrants may disclose factors "*such as* . . . correlation between cost to registrant and expected benefits to the registrant."  Contrary to Plaintiff's suggestion, this is an illustrative, not mandatory, factor.

the business "by the artful delay of the action that is the apparent predicate to the required disclosure." *Allyn Corp. v. Hartford Nat. Corp.,* No. 81 Civ. 912, 1982 WL 1301, at *27 (D. Conn., March 30, 1982). In *Allyn Corp.*, the company withheld the names of the directors to be elected by the Proxy. Nothing like that occurred here. Rather, Coty disclosed the amount of the PSRUs granted to Ms. Nabi, the reasons for the grant and the vesting schedule. However, the performance-based conditions for the vesting of the PSRUs may be structured at a later time, subject to the Board's discretion and the external needs of the Company in the future. Those future events could not be disclosed in last September's Proxy.

*Third*, for paragraph 23 of the Amended Complaint, Plaintiff makes three arguments: (i) that the Proxy must disclose compensation in dollars, rather than number of shares; (ii) that the disclosure omits Ms. Nabi's "new 6 billion [sic] euro bonus"; and (iii) that the math required to calculate the number of shares granted to Ms. Nabi "puts too much pressure on stockholders" in contrast to how the disclosure was made in Coty's May 4, 2023 Form 8-K (Ex. B). (AB at 9-10.) None of these arguments hold weight.

Plaintiff cites 17 C.F.R. §240.14a-5(a) for the proposition that "[a]ll amounts [in the Proxy] should be stated in figures," but "amount" for purposes of that regulation is defined as "***the number of shares if relating to shares***." 17 C.F.R. § 240.12b-2. Plainly, compensation does not have to be reported in dollars. *See* 17 CFR § 240.12b-2.

Next, page 33 of the Proxy expressly discloses the amount of Ms. Nabi's bonus, which Plaintiff acknowledges. (AB at 9 ("if shareholders had read the two previous paragraphs, they would have discovered Defendant Nabi's new 6 billion [sic] euro bonus").)[8] Finally, as explained

---

[8]   Ms. Nabi's bonus is for an annual maximum of 6 *million* Euros, not 6 *billion*. (Proxy at 33.) Plaintiff misrepresents the amount of Ms. Nabi's compensation elsewhere in her Answering Brief and argues that the "amount of Nabi's compensation is an issue of fact not determinable

*(cont'd)*

in Defendants' Opening Brief, calculating the total number of PSRUs granted to Ms. Nabi upon reading page 33 of the Proxy requires, at most, one step of multiplication (2,083,333 x 5) and one step of addition (+ 10,416,667).  (OB at 12.)  Coty has full faith that interested shareholders are capable of doing this math, which neither "puts too much pressure" on them nor "challenge[s] their critical wits."  (AB at 10.)  As Judge Stanton noted, "[a]fter all, 'corporations are not required to address their stockholders as if they were children in kindergarten.'"  *Vides v. Amelio*, 265 F. Supp. 2d 273, 280 (S.D.N.Y. 2003) (Stanton, J.) (quoting *Wallerstein v. Primerica Corp.*, 701 F. Supp. 393, 398 (E.D.N.Y. 1988)); *see also Sable v. Southmark/Envicon Cap. Corp.*, 819 F. Supp. 324, 334 (S.D.N.Y. 1993) ([I]t is "sufficient if [a] company provides information as to material facts in a format from which a reasonable investor could reach his own conclusions.").[9]

## II.   PLAINTIFF'S FAILURE TO PLEAD LOSS CAUSATION IS FATAL TO HER SECTION 14(a) CLAIM.

In light of her fatal concession that the Proxy "did not cause economic loss," (AC ¶ 26), Plaintiff argues that loss causation is not an element of her claim for injunctive relief.  (AB at 11-14.)  On the contrary, in *Rubenstein*, 2023 WL 6119810, the Second Circuit held that loss causation is a pleading requirement for a claim made under Section 14(a), regardless of the relief requested. Indeed, *Rubenstein* involved a request for injunctive relief.  *Rubenstein*, at * 1 ("The Amended Complaint seeks both injunctive relief and the disgorgement of compensation.").

---

on this motion to dismiss."  (AB at 3.)  However, the amount of Ms. Nabi's compensation is set forth in the Proxy, which Plaintiff does not dispute that the Court may consider on this motion.  (*See* OB at 2, note 1.)

[9]   Plaintiff cites *St. Louis Police Retirement System v. Severson*, No. 12 Civ. 5086 YGR, 2012 WL 5270125, at *4-6 (N.D. Cal., Oct. 23, 2012), where defendant omitted entirely that a cap on an equity incentive plan had been reached.  In contrast, here, Plaintiff complains only that information was not provided in the format she prefers.

The *Rubenstein* court squarely rejected the plaintiff's "assertion that 'loss causation is sufficiently pled under Section 14(a) where a plaintiff alleges that misleading proxy statements were issued in connection with and led to the election of directors,'" as "incorrect as a matter of law." *Id.* at *4 n.6. *Rubenstein* confirms that "a Section 14(a) claim must allege 'both loss causation and transaction causation.'" *Id.* (quoting *Grace v. Rosenstock*, 228 F.3d 40, 47 (2d Cir. 2000)). Simply put, a "tainted election" is not enough without economic harm. Indeed, no authority cited by Plaintiff establishes her "tainted election" exception to loss causation. (*See* AB at 11-12.)

Plaintiff next argues that her requested relief—overturning the directors' election—is neither extreme nor unprecedented, but she found no case granting such draconian relief. (AB at 13-14 (citing *Edelman v. Salomon*, 559 F. Supp. 1178, 1184-85 (D. Del. 1983) (*postponing* a directors' election); *Woodford Eurasia Assets Ltd. v. Lottery.com, Inc.,* No. 23 Civ. 1317, 2023 WL 8005621 at *4 (D. Del., Nov. 17, 2023) (*denying* requested injunctive relief)).) This should not be the first case to take that drastic step.

## III. PLAINTIFF'S DERIVATIVE BAD FAITH CLAIM SHOULD BE DISMISSED FOR FAILURE TO SUFFICIENTLY ALLEGE DEMAND FUTILITY.

As explained in the Opening Brief, Plaintiff's claim that the directors violated fiduciary duties in approving Ms. Nabi's executive compensation fails to satisfy the "heightened" and "stringent" standards for pleading demand futility under Delaware law. (OB at 15-24.)

Plaintiff's Answering Brief is notable for its many case dispositive omissions. Plaintiff does not dispute that "courts in this District frequently dismiss derivative claims on a motion to dismiss under Rule 23.1's 'stringent,' heightened pleading standard." (OB at 16.) Plaintiff does not dispute that under Delaware law "demand excusal must be shown on a director-by-director basis." (AB at 16.) Plaintiff does not dispute that she was required to adequately allege that a

*majority* of Coty's eleven directors face a **substantial likelihood** of liability.  (OB at 17.)  Plaintiff does not dispute that defendants Creus, Goudet and Harf face no substantial likelihood of liability.  (*Id.*)  Plaintiff does not dispute that "Coty's charter immunizes the Board from liability for breaches of their duty of care, *i.e.,* exculpated claims."  (OB at 18.)  Plaintiff does not dispute that she "relies on just the single theory of 'bad faith' to negate exculpation."  (OB at 19.)  Plaintiff does not dispute that the "'stringent'" standard for pleading a bad faith claim under Delaware law is "'difficult for any plaintiff to meet.'"  (*Id.* (citation omitted))  Plaintiff does not dispute that "it takes an **extreme factual scenario** for a plaintiff to state a claim for bad faith or waste," especially for a claim concerning executive compensation.  (OB at 20 (citation omitted).)  Plaintiff does not dispute that merely calling compensation excessive or lavish is insufficient because a board's business judgment regarding executive compensation is entitled to great deference.  (*Id.*)  Finally, Plaintiff does not dispute that "the vast majority of derivative claims challenging executive compensation under Delaware law are dismissed at the pleadings stage."  (OB at 21.)  Through these concessions, coupled with the arguments Defendants made in their Opening Brief (OB at 19-24), it is clear that Plaintiff has not shown that demand is futile and Plaintiff's breach of fiduciary claim should be dismissed at the pleadings stage.

Moreover, the few arguments made by Plaintiff in support of her fiduciary duty claim are not credible.

*First*, Plaintiff argues that "[c]ourts have developed standards for the determination of what is reasonable compensation for the CEO," analyzing, among other things, "what other executives similarly situated receive, the ability of the CEO, the relation of the compensation to the size and success of the corporation . . . ."  (AB at 17; *see id.* at 19.)  This is false.  Delaware courts do not make a substantive reasonableness assessment of executive compensation.  The 50-year-old case

relied on by Plaintiff, *Wilderman v. Wilderman*, 315 A.2d 610 (Del. Ch. 1974),[10] has long been superseded by the many cases cited in the Opening Brief explaining that Delaware courts afford boards great deference in setting executive compensation.  (OB at 20.)  In fact, the Delaware Supreme Court has previously held *Wilderman* as "inapposite" because, there, the executive "caused excessive unearned and unauthorized payments to himself," *i.e.*, a self-dealing situation. *Gonzalez v. Ward*, 2004 WL 77862, at *2 (Del. Jan. 15, 2004) (decision referenced in table at 841 A.2d 307); *see also Telxon Corp. v. Meyerson*, 802 A.2d 257, 265 (Del. 2002) (classifying *Wilderman* as a "self-compensation decision[]").  Plaintiff's request that the Court evaluate Ms. Nabi's "peer compensation" or "Coty's peer group" in order to second guess the Board's decision is inconsistent with modern Delaware law.  (AB at 19-21.)[11]

*Second*, Plaintiff's primary authority for questioning the amount of an executive's compensation involves actual wrongdoing not pled here.  (AB at 16.)  In *City of Fort Myers General Employees' Pension Fund v. Haley*, plaintiffs alleged that, following a proposed merger of equals, the CEO secretly negotiated a compensation package at five times its prior value without involving the board.  235 A.3d 702, 717 (Del. 2020).  The Delaware Supreme Court held that the Court of Chancery erred in dismissing plaintiffs' claim because the CEO's self-interest was material and that reasonable directors would have considered the compensation to be significant

---

[10]   Plaintiff also argues (without citation) that *Brehm v. Eisner* "show[s] that, as a matter of law, Ms. Nabi's peers are of major consequence."  (AB at 21.)  Yet, the word "peer" does not appear in *Brehm*.  746 A.2d 244 (Del. 2000).  Plaintiff's reliance on two century-old New York state cases (AB at 17-18)—never cited by a Delaware court—is irrelevant because, "[t]he substance of the law excusing such demand is the law of the state of incorporation."  (*Id.* at 15.)

[11]   Plaintiff disputes that "Ms. Nabi's compensation as compared to 'her peers' or 'Coty's other NEOs' is inconsequential as a matter of law," (AB at 21 (quoting OB at 24)), arguing that Defendants "cite no case."  (*Id.*)  Plaintiff ignores the argument that "'if a 'particular individual warrant[s] large amounts of money . . . the board has made a business judgment,'" demonstrating that peer compensation is indeed inconsequential.  (OB at 24 (citation omitted).)

when evaluating the proposed merger.  *Id.* at 717-724.  In contrast, here, Coty's Board and stockholders have approved of Ms. Nabi's publicly disclosed executive compensation package.

*Third*, Plaintiff argues that the Amended Complaint satisfies *Zuckerberg's* director-by-director standard (OB at 17) because "each Coty director did the exact same things at the exact same times, which the Amended Complaint alleges in great detail."  (AB at 17.)  But Plaintiff provides no such "great detail."  Plaintiff's "broad statements are insufficient to demonstrate demand futility."  *Pierce v. Better Holdco, Inc.,* Civ. No. 22 Civ. 4748 (AT), 2023 WL 6386920, at *9 (S.D.N.Y. Sept. 29, 2023) (adopting *Zuckerberg* standard).

*Fourth*, Plaintiff argues that Defendants violated positive law by omitting certain disclosures.  (AB at 19-20.)  Not only is this false, (*see supra* [-]), but Plaintiff provides no explanation for how disclosures to the shareholders support her claim challenging a Board decision.

*Fifth*, Plaintiff cites *Garfield ex rel. ODP Corp. v. Allen,* 277 A.3d 296 (Del. Ch. 2022), to minimize the impact of shareholder support of the executive compensation.  (AB at 20.)  *Garfield* states that say-on-pay resolutions cannot support a ratification defense.  277 A.3d at 354.  Here, Defendants have not invoked that defense, so that point is meaningless.

*Finally*, Plaintiff downplays the correlation between Ms. Nabi's contributions to Coty and her compensation by arguing "[t]hat cost is the expense to Coty regardless of how it performs or how many shares are paid out."  (AB at 20.)  This is false.  Ms. Nabi would "be paid less if Coty performed poorly" (*id.*); that is how RSUs operate.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Dated: New York, New York
      January 19, 2024

*/s/ Scott D. Musoff*
Scott D. Musoff
Lauren E. Aguiar
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
scott.musoff@skadden.com
lauren.aguiar@skadden.com


Paul J. Lockwood (*pro hac vice* pending)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Facsimile: (302) 651-3005
paul.lockwood@skadden.com

*Attorneys for Defendants Coty Inc., Maria Asuncion Aramburuzabala Larregui, Beatrice Ballini, Joachim Creus, Olivier Goudet, Peter Harf, Johannes P. Huth, Anna Adeola Makanju, Sue Nabi, Isabelle Parize, Lubomira Rochet and Robert Singer*

11