UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CATHY BUCH,<br><br>        Plaintiff,<br><br>    v.<br><br>MARIA ASUNCION ARAMBURUZABALA LARREGUI, et al.,<br><br>        Defendants. | 23 Civ. 8854 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

  In this action, Plaintiff Cathy Buch, a shareholder of Defendant Coty Inc. ("Coty"), sues Coty and its board of directors regarding Coty's compensation of its CEO and the proxy statement it issued with respect to this compensation package. Plaintiff brings two claims: (1) a claim under the Securities Exchange Act of 1934 (the "Exchange Act"), regarding the allegedly deficient compensation-related disclosures in Coty's public filings; and (2) a shareholder derivative claim, regarding the alleged breach of fiduciary duty by Coty's board in setting the level of compensation. On November 29, 2023, Plaintiff filed the Amended Complaint, the operative pleading. *See* Am. Compl., ECF No. 46. Defendant moves to dismiss the Amended Complaint. *See* Mot. to Dismiss, ECF No. 47. For the reasons given below, Defendant's motion is **GRANTED**.

BACKGROUND

  The following facts are taken from the Amended Complaint and are assumed to be true solely for purposes of adjudicating Defendant's motion. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023). The Court also refers to documents integral to the Complaint, in particular the allegedly insufficient public disclosure at issue in this suit, attached as Exhibit A to the

Declaration of Scott D. Musoff, ECF No. 49-1.  *See Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024).

Coty is a Delaware corporation that manufactures and sells beauty products.  Am. Compl. ¶ 4.  Defendant Sue Nabi is the Chief Executive Officer of Coty.  *Id.* ¶ 5.  Along with Nabi, Defendants Maria Asuncion Aramburuzabala Larregui, Beatrice Ballini, Joachim Creus, Olivier Goudet, Peter Harf, Johannes P. Huth, Anna Adeola Makanju, Isabelle Parize, Lubomira Rochet, and Robert Singer comprise Coty's board of directors (collectively, the "Individual Defendants").  *See id.*  Plaintiff has been a shareholder of Coty since December 3, 2021.  *Id.* ¶ 3.

On September 21, 2023, Coty's board of directors solicited its shareholders' proxies to vote at an annual meeting on November 2, 2023.  *See* Schedule 14A, ECF No. 49-1 (the "Proxy Statement"); Am. Compl. ¶ 12.  The Proxy Statement includes a proposal for the election of directors and also asks shareholders to vote, "on a non-binding advisory basis," to approve executive compensation, a so-called "Say-on-Pay" vote.  *See* Proxy Statement 21, 29.  It then provides quantitative and descriptive information regarding past and proposed executive compensation, including for Nabi.  *See id.* at 38.

The Proxy Statement describes that Nabi's compensation "includes a significant portion of performance related shares alongside a performance related bonus."  *Id.* at 33.  As summarized in the Proxy Statement, Nabi received around $283.8 million, $3.6 million, and $149.4 million in fiscal years 2021, 2022, and 2023, respectively.  *Id.* at 38.[1]  Nabi receives an annual base salary of three million Euros, and, moving forward, is eligible for a cash-bonus of up

---

[1] The Proxy Statement notes that the value of equity awards is based on the closing price of Coty's stock on the vesting or valuation date, and that dollar amounts "may vary significantly year over year due to factors such as stock price volatility, as was the case for the years presented here."  *Id.* at 47-48.

to 200% of this salary.  *Id.*  When she joined the company in September 2020, Nabi also received a one-time sign-on award of 30 million restricted stock units ("RSUs"), which vested in three tranches on August 31 of 2021, 2022, and 2023.  *Id.* at 47.  Pursuant to a May 4, 2023, agreement, Nabi will also receive a further award of 10.4 million RSUs, vesting from September 1, 2024, through September 1, 2028, and is eligible to receive two tranches of around 2.1 million performance-based RSUs, contingent on meeting certain performance metrics.  *Id.* at 33.  The Proxy Statement lists a ratio of CEO total compensation to median employee total compensation of 3,769 to 1.  *Id.* at 45.  The Proxy Statement notes that compensation is set with reference to a peer group of twelve companies, four of which are based in the United States, that compete with Coty in the marketplace and in recruiting executives.  *Id.* at 36; Am. Compl. ¶ 25.

On October 9, 2023, Plaintiff filed this suit.  *See* Compl., ECF No. 1.  The shareholder meeting took place on November 2, 2023, where the board of directors was elected in accordance with the Proxy Statement.  *See* Am. Compl. ¶ 26.  On November 29, 2023, Plaintiff amended her Complaint.  *See id*.  On December 22, 2023, Defendants moved to dismiss the Amended Complaint.  *See* Mot. to Dismiss.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[2]  "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor."  *Id.* at 106-07.

---

[2] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated.  All references to Rules are to the Federal Rules of Civil Procedure, unless otherwise indicated.

However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A complaint alleging securities fraud must also satisfy heightened pleading requirements set forth in Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 75 (2d Cir. 2021). Rule 9(b) requires that "a party . . . state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The PSLRA "expanded on the Rule 9(b) standard." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012). The PSLRA requires that a plaintiff "(1) specify each misleading statement, (2) set forth the facts on which a belief that a statement is misleading was formed, and (3) state with particularity facts giving rise to a strong inference that the defendant acted with scienter—the required state of mind." *Set Cap. LLC*, 996 F.3d at 75.

## DISCUSSION

Defendant's motion to dismiss is **GRANTED**. The Amended Complaint brings two claims: (1) an Exchange Act claim, brought under Section 14(a), which bars false or misleading proxy statements; and (2) a shareholder derivative claim regarding Nabi's excessive compensation. Plaintiff's Section 14(a) claim is dismissed for failure to plead loss causation. Plaintiff's derivative claim is dismissed for failure to make a demand on the Individual Defendants, or to plead facts establishing the futility of such a demand.

A.   **Section 14(a) Claim**

Count I of the Amended Complaint alleges a violation of Section 14(a) of the Exchange Act, which bars any person from "solicit[ing] . . . any proxy or consent or authorization in respect of any security" that is "in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78n(a)(1). SEC Rule 14a-9 bars proxy statements that are "false or

4

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 7 C.F.R. § 240.14a-9.  A claim under Section 14(a) requires Plaintiff to "show that (1) a proxy statement contained a material misrepresentation or omission, which (2) caused plaintiff['s] injury, and (3) the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Bond Opportunity Fund v. Unilab Corp.*, 87 F. App'x. 772, 773 (2d Cir. 2004).

The Second Circuit has repeatedly and unambiguously held that loss causation is an element of a Section 14(a) claim.  *See Gray v. Wesco Aircraft Holdings, Inc.*, 847 F. App'x 35, 37 (2d Cir. 2021) ("[T]he complaint fails to plead that Gray suffered a non-speculative economic loss, as required for the claims [under Sections 14(a) and 20(a)]."); *Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 415 (2d Cir. 2011) ("For both his 14(a) and 10(b) claims, [the plaintiff] has the burden of pleading and proving loss causation."); *Grace v. Rosenstock*, 228 F.3d 40, 47 (2d Cir. 2000) ("[B]oth loss causation and transaction causation must be proven in the context of a private action under § 14(a) of the 1934 Act and SEC Rule 14a–9 promulgated thereunder.") (collecting cases).

Here, the Amended Complaint states that "[t]he 2023 proxy statement . . . did not cause economic loss." Am. Compl. ¶ 26.  Because Plaintiff admits that the Proxy Statement did not cause her any economic loss, her Exchange Act claim is dismissed.

Plaintiff's arguments to the contrary fail.  In substance, she argues that loss causation is not a required element of her claim, because she does not seek to recover damages and instead seeks injunctive relief to nullify the shareholder vote.  *See* Mem. of L. in Opp'n to Defs.' Mot. to Dismiss the Am. Compl. ("Opp'n") 11-14, ECF No. 51.  This argument fails first because the Second Circuit, when articulating the requirement of loss causation, did not limit this

5

requirement to claims for damages only, instead referring to Section 14(a) claims generally.  *See, e.g.*, *Gray*, 847 F. App'x at 37 (stating loss causation is "required for the claims"); *Amorosa*, 409 F. App'x at 415 (similar); *Grace*, 228 F.3d at 47 (similar).  Plaintiff identifies no cases in which a plaintiff admitted that he or she suffered no loss, yet a court nevertheless granted injunctive relief on a Section 14(a) claim.

Plaintiff's argument also fails in light of the Second Circuit's recent statement that although an allegation that a company's "directors were re-elected based on proxy statements issued in violation of Section 14(a) . . . [is] sufficient to establish transaction causation, . . . [it] fails to allege sufficient facts to plead loss causation." *Rubenstein v. Adamany*, No. 22-2794, 2023 WL 6119810, at *4 (2d Cir. Sept. 19, 2023).  Although the operative complaint in *Rubenstein* sought "both injunctive relief and the disgorgement of compensation," the Circuit affirmed dismissal of the case in whole.  *See id.* at *1, *5.  Plaintiff does not provide sufficient reason to depart from the clear implication of *Rubenstein*—that the requirement of loss causation applies equally to any claim for injunctive relief as it does to a claim for money damages.  Plaintiff's Exchange Act claim is therefore dismissed.

**B.     Derivative Claim**

Count II is a shareholder derivative claim, asserted putatively on behalf of Defendant Coty against the Individual Defendants.  *See* Am. Compl. ¶¶ 29-36.  Rule 23.1(b) sets forth additional pleading requirements for such a shareholder derivative action, including that Plaintiff must "state with particularity (A) any effort . . . to obtain the desired action from the directors or comparable authority . . . and (B) the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3).  Plaintiff states in the Amended Complaint that she "made no pre-suit demand to obtain the desired action from the Coty directors because such demand is excused as futile."  Am. Compl. ¶ 31.

Under Delaware law,[3] courts apply a "three-part test on a director-by-director basis to determine whether demand should be excused as futile." *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1058 (Del. 2021). Courts should look at:

> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
>
> (ii) whether the director faces a substantial likelihood of liability on any of the claims that are the subject of the litigation demand; and
>
> (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.

*Id.* at 1059. "If the answer to any of the questions is 'yes' for at least half of the members of the demand board, then demand is excused as futile." *Id.*

Coty's board, which the Amended Complaint alleges authorized Nabi's compensation, consists of the eleven Individual Defendants. *See* Am. Compl. ¶¶ 5, 32. The Amended Complaint alleges that the Individual Directors acted in bad faith in approving Nabi's compensation and that the magnitude and allegedly misleading nature of the Proxy Statement "expose all of the directors to a very real substantial risk of liability for breach of their fiduciary duty of good faith and loyalty." *Id.* ¶ 33. The Amended Complaint also alleges, in a conclusory fashion, that the Individual Defendants "are not independent" because the excessiveness of Nabi's compensation is outside the business judgment rule. *Id.*

---

[3] The parties agree that Delaware law applies to Plaintiff's derivative claim, as Coty is incorporated in Delaware. *See* Opp'n at 15 ("The substance of the law excusing such demand is the law of the state of incorporation, . . . in this case Delaware." (citation omitted)); Mem. of L. in Supp. of Mot. to Dismiss 15 n.11 ("MTD Br."), ECF No. 48 ("Although Rule 23.1 sets forth the pleading standard for federal court, the substance of the demand requirement is a function of state law—here, Delaware law." (internal quotation marks omitted)).

As to the former, the Amended Complaint does not sufficiently allege that a majority of the Individual Defendants would face a substantial likelihood of liability on Plaintiff's claim, thus making a demand upon them futile.  Delaware law allows corporations to insulate their directors from liability for breaching their duties of care.  *See* Del. Code Ann. tit. 8, § 102(b)(7) (2022) (permitting a charter provision "eliminating or limiting the personal liability of a director or officer . . . for breach of fiduciary duty as a director or officer," while barring any provisions eliminating liability for "any breach of the . . . duty of loyalty to the corporation" or "for acts or omissions not in good faith," among other exceptions).  Coty's charter includes such a provision.  *See* Musoff Decl. Ex. F Eighth Provision, at 11, ECF No. 49-6 (exculpatory provision); *see also* Fed. R. Evid. 201(c)(2) (mandating that a Court take judicial notice of a fact not subject to reasonable dispute if brought to its attention).  Accordingly, the Amended Complaint must plead that the Individual Defendants would face a substantial likelihood of liability on a non-exculpated claim—i.e., a claim alleging bad faith.  *See Lase Guar. Tr. v. Bammann*, No. 22 Civ. 1331, 2024 WL 1117043, at *3 (E.D.N.Y. Mar. 14, 2024) ("Because exculpated claims must be dismissed at the pleading stage, a defendant who is exculpated does not face a substantial likelihood of liability, and can impartially consider a demand to bring an exculpated claim against even herself.") (discussing *In re Cornerstone Therapeutics Inc, S'holder Litig.*, 155 A.3d 1173, 1179 (Del. 2015)).  "[T]o establish a substantial likelihood of liability [on a non-exculpated claim], it is not enough to establish a breach of the duty of care, but rather plaintiff must allege 'conduct that is not in good faith or a breach of the duty of loyalty.'" *City of Miami Gen'l Emps. & Sanitation Emps. Ret. Tr. v. Dimon*, No. 23 Civ. 3903, 2024 WL 134275, at *2 (S.D.N.Y. Jan. 12, 2024) (quoting *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 367 (Del. 2006)).

The Amended Complaint alleges that Nabi's compensation was set without proper disclosure to shareholders and is excessive to such an extent that bad faith *must* be assumed. *See* Am. Compl. ¶ 33 ("Where . . . the magnitude of Defendant Nabi's compensation is a substantial multiple of that of her peers and also of that of Coty's other [named executive officers], without any disclosure of statutory and regulatory required explanations for it, the only possible conclusion is that the directors acted in bad faith."). This is insufficient to establish bad faith. First, District Courts applying Delaware law have found that the failure to include allegations specific to each director is fatal to demonstrating a substantial likelihood of liability. *See, e.g.*, *Pierce v. Better Holdco, Inc.*, No. 22 Civ. 4748, 2023 WL 6386920, at *3 (S.D.N.Y. Sept. 29, 2023) ("Pierce has not included allegations on a director-by-director basis, and instead pleads in a conclusory fashion that the Board as an entity was compromised by a lack of independence and a risk of liability. These broad statements are insufficient to demonstrate demand futility . . . ."); *Foote v. Mehrotra*, No. 21 Civ. 169, 2023 WL 7214728, at *11 (D. Del. Nov. 2, 2023) (similar).

Second, even assuming that Plaintiff included allegations regarding each director's participation in setting Nabi's compensation, her compensation, standing alone, is not so extreme so as to rebut the presumption of good faith. The Delaware Court of Chancery has found that while the sole fact of a decision can support an inference of bad faith, the decision must be "so egregious or irrational that it could not have been based on a valid assessment of the corporation's best interests." *IBEW Local Union 481 Defined Contrib. Plan & Tr. v. Winborne*, 301 A.3d 596, 622 (Del. Ch. 2023). "The standards for corporate waste and bad faith by the board are similar." *White v. Panic*, 783 A.2d 543, 554 n.36 (Del. 2001). Delaware law gives corporate boards broad discretion to set executive compensation. *See Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000) ("[T]he size and structure of executive compensation are inherently matters of judgment."). However, a plaintiff may establish a claim for waste by proving "there was an

9

exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade," or, more specifically, when executive compensation "is so disproportionately large as to be unconscionable and constitute waste." *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 138 (Del. Ch. 2009). In short, Plaintiff must show that Nabi's compensation is so excessive—with excessiveness assessed under the deferential standard afforded to the boards of Delaware corporations—that it could only be explained by bad faith. *See Espinoza ex rel. J.P. Morgan Chase & Co. v. Dimon*, 807 F.3d 502, 505 (2d Cir. 2015) ("Any plaintiff attempting to bring a derivative suit therefore bears the difficult burden to plead facts sufficient to rebut the strong presumption that the board's decision not to take action was a valid exercise of its business judgment.") (applying Delaware law).

The Amended Complaint does not meet this high standard. The Amended Complaint states that Nabi's compensation exceeds $900 million over fiscal years 2021 through 2023. *See* Am. Compl. ¶ 19. However, the actual Proxy Statement undermines this characterization: Ms. Nabi's compensation totals around $437 million over these fiscal years. *See* Proxy Statement at 38.[4] Ms. Nabi was awarded a sign-on grant of 30 million RSUs in June 2021, which vested in

---

[4] As Defendants explain, *see* MTD Br. at 4 n.6, the discrepancy between the two figures comes from the Amended Complaint's inclusion of figures representing stock options that have already vested, *see* Am. Compl. ¶ 19(d), (e), and the value of stock or performance RSUs to be granted *beyond fiscal year 2023*, *see id.* ¶ 19(f)-(h). Although on a motion to dismiss, all reasonable inferences must be drawn in favor of Plaintiff, the Court may consider the Proxy Statement as integral to the Complaint and it is not reasonable, based on the Proxy Statement, to treat Ms. Nabi's compensation for fiscal years 2021 through 2023 as "exceed[ing] $900 million." *Id.* ¶ 19; *see Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) ("[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true.").

three tranches on August 31 of 2021, 2022, and 2023. *See id.* at 47. A substantial portion of her compensation reflected an increase in Coty's share price following Ms. Nabi's hire, as indicated further by the extreme fluctuations in the value of Nabi's compensation. *See id.* at 48 (discussing the connection between share price and compensation actually paid to Nabi and other directors); *see also Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 166 n.8 (2d Cir. 2000) ("[T]he district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment.").

This amount is undeniably quite large. But "corporate boards have broad discretion to set executive compensation, and courts rarely second-guess directors' compensation . . . decisions." *In re Am. Int'l Grp., Inc. Deriv. Litig.*, 700 F. Supp. 2d 419, 443 (S.D.N.Y. 2010). It is also noteworthy that the Amended Complaint does not identify any deficiencies in Nabi's job performance. *See Pickett v. Gorevic*, No. 19 Civ. 5875, 2021 WL 4927061, at *13-14 & n.18 (S.D.N.Y. Mar. 26, 2021) (noting the lack of allegations regarding the job performance of the executive in question and noting that Delaware cases crediting claims for waste "involve[] absurdly generous compensation packages bestowed on incompetent or unqualified executives"), *adopted sub nom. Pickett v. Teladoc Health, Inc.*, 2021 WL 4239176 (S.D.N.Y. Sept. 17, 2021).

Given this broad discretion, even construing all reasonable inferences in Plaintiff's favor, Nabi's compensation is not "so extreme that it could not be rationally explained on another basis," so as to require an inference of bad faith. *Winborne*, 301 A.3d at 622. Accordingly, Plaintiff has not established that the directors would face a substantial likelihood of liability on a non-exculpated claim, thus excusing the requirement to make a demand upon them.

The Amended Complaint also states that the directors are not independent, because they authorized Nabi's compensation "for reasons other than Coty's best interests" and because they are not protected by the business judgment rule. Am. Compl. ¶ 33. These conclusory allegations

11

are not developed in Plaintiff's opposition and, in any event, do not establish that the directors "lack[] independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand." *Zuckerberg*, 262 A.3d at 1059.

Plaintiff does not establish that her failure to make a demand upon the board of directors should be excused as futile. She therefore cannot maintain a derivative suit, and Count II is dismissed.

## CONCLUSION

For the reasons given above, Defendant's motion is **GRANTED** and the Amended Complaint is **DISMISSED, with prejudice**. Plaintiff's request for oral argument is **DENIED** as moot.

The Clerk of Court is respectfully directed to close the motion at ECF No. 47 and to terminate the case.

SO ORDERED.

Dated: June 4, 2024
      New York, New York

                              DALE E. HO
                       United States District Judge